UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ARAFAT ALI SALEH,

                          Plaintiff,

          -against-                      **MEMORANDUM AND ORDER**
                                                      17 CV 4574 (NGG) (CLP)
MICHAEL R. POMPEO, SECRETARY OF
STATE *et al.*,

                          Defendants.
------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

        On August 3, 2017, plaintiff Arafat Ali Saleh ("plaintiff" or "Mr. Saleh") filed this suit against Secretary of State Rex Tillerson,[1] the United States Department of State, the National Passport Center, and United States Customs and Border Protection (collectively, "defendants"), alleging, inter alia, violations of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555 and 701 et seq., and 8 U.S.C. § 1503(a). (See Compl.[2]).

        On May 2, 2018, plaintiff filed a letter motion to compel production of the administrative record or, in the alternative, he sought a pre-motion conference for expedited production of the administrative record. (Pl.'s Mot.[3] at 1). For the reasons that follow, the Court Orders defendants to produce the complete administrative record for in camera review by September 7, 2018.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary of State Michael R. Pompeo is substituted for former Acting Secretary John Sullivan. Defendants have requested the district court to direct the Clerk to update the caption accordingly. (Defs.' Ltr at 1, May 4, 2018, ECF No. 27).

[2] Citations to "Compl." refer to Mr. Saleh's Complaint, filed by plaintiff on August 3, 2017, ECF No. 1.

[3] Citations to "Pl.'s Mot." refer to Mr. Saleh's letter motion to compel production of the administrative record or, in the alternative, a pre-motion conference for expedited production of the administrative record, filed by plaintiff on May 2, 2018, ECF No. 26.

1

FACTUAL AND PROCEDURAL BACKGROUND

Defendants indicate that Mr. Saleh first applied for a U.S. passport on April 26, 1998. (See Defs.' Mot.[4] at 5). According to defendants, plaintiff applied for a U.S. passport based on section 301(g) of the Immigration and Nationality Act ("INA"), which required proof that one of Mr. Saleh's parents had been physically present in the United States for ten years prior to his birth.[5] (See id.) Defendants explain that the Department of State denied Mr. Saleh's passport application because plaintiff failed to provide sufficient proof to establish that his father had been physically present in the United States for the required ten years. (See id.) Defendants also assert that Mr. Saleh "reapplied for a U.S. passport at [the] U.S. Embassy in Sana'a in 2007 and 2009[,]" and "[i]n both instances, his applications were denied." (Defs.' 2/22/18 Ltr[6] at 1).

On or about August 4, 2010, Mr. Saleh reapplied for a U.S. passport at the U.S. embassy in Sana'a, Yemen. (Am. Compl.[7] ¶ 15; Defs.' Mot. at 4). On this occasion, the U.S. embassy in Sana'a granted the passport application and issued Mr. Saleh a U.S. passport.[8] (See Am. Compl. ¶

---

[4] Citations to "Defs.' Mot." refer to defendants' Memorandum in Support of the Government's Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction, filed by defendants on May 18, 2018, ECF No. 37.

[5] The applicable statute for determining whether a U.S. citizen parent may confer U.S. citizenship onto his or her foreign-born child "is the statute that was in effect at the time of the child's birth." Porter v. Quarantillo, 722 F.3d 94, 96 n.1 (2d Cir. 2013) (quoting Drozd v. I.N.S., 155 F.3d 81, 86 (2d Cir. 1998)). At the time of Mr. Saleh's birth, section 301(g) of the INA provided that a U.S. citizen parent could transmit U.S. citizenship to a child born abroad if the U.S. citizen parent had resided in the United States for ten years prior to the child's birth. See 8 U.S.C. § 1401(g) (1983), amended by Pub L. 99-653 (1986). Effective November 14, 1986, a U.S. citizen parent may confer U.S. citizenship onto his or her child if the U.S. citizen parent has resided in the United States for five years prior to the child's birth and the child was born on or after November 14, 1986. See id.

[6] Citations to "Defs.' 2/22/18 Ltr" refer to defendants' letter to the district court filed on February 22, 2018, ECF No. 15.

[7] Citations to "Am. Compl." refer to Mr. Saleh's Amended Complaint, filed by plaintiff on April 30, 2018, ECF No. 25.

[8] As the Court discusses infra, the parties disagree as to whether and how the Department of

16; Defs.' Mot. at 4-5). On or about October 19, 2015, a Customs and Border Patrol ("CBP") officer at Abu Dhabi International Airport in the United Arab Emirates confiscated Mr. Saleh's U.S. passport. (Am. Compl. ¶¶ 20-21; Defs.' Mot. at 6).

Plaintiff argues that the CBP acted improperly when it confiscated his U.S. passport in Abu Dhabi without explaining to him why his passport was being cancelled or challenged. (See Am. Compl. ¶ 25). He further alleges that upon arriving in the United States with temporary identification documents the next day, the CBP "apologized for the inconvenience and for the fact that his passport was wrongly taken from him[.]" (Id. ¶ 29). Mr. Saleh also maintains that the CBP advised him that he would receive a new U.S. passport in two weeks. (Id.) However, Mr. Saleh never received a new U.S. passport. (See id. ¶ 30).

On August 3, 2017, Mr. Saleh filed this action, seeking relief based on several statutory provisions, including the APA, 5 U.S.C. §§ 555 and 701 et seq., and 8 U.S.C. § 1503(a). (Id. ¶¶ 51-88). On September 27, 2017, the Department of State sent Mr. Saleh a letter, informing him that the agency had revoked his U.S. passport on April 25, 2014. (Defs.' Mot., Ex. B).

On April 20, 2018, Mr. Saleh filed an application, seeking leave to amend his Complaint. (Pl.'s 4/20/18 Ltr[9] at 1). Plaintiff's letter motion indicated that he sought "to simplify the instant action for the purpose of shortening the length of time required to adjudicate the instant action and dismiss all claims but [his] claim pursuant to the Administrative Procedure Act (APA)." (Id.) Mr.

---

State determined Mr. Saleh was eligible to receive a U.S. passport. Mr. Saleh's position is that the Department of State declared him a U.S. citizen during the adjudication of his passport application. Defendants offer a number of possible reasons to support their contention that the Department of State erroneously designated Mr. Saleh as a U.S. citizen, and therefore, mistakenly issued Mr. Saleh a U.S. passport. (Compare Pl.'s 4/20/18 Ltr at 1, with Defs.' Mot. at 5).

[9] Citations to "Pl.'s 4/20/18 Ltr" refer to Mr. Saleh's letter motion to amend his Complaint and expedite production of the administrative record, filed by plaintiff on April 20, 2018, ECF No. 21.

3

Saleh also requested an expedited production of the administrative record. (Id.) By Electronic Order dated April 24, 2018, the Honorable Nicholas G. Garaufis granted plaintiff's application for leave to amend his Complaint but denied the request for expedited discovery, allowing Mr. Saleh to renew his request for expedited discovery after filing his Amended Complaint.

On April 30, 2018, Mr. Saleh filed his Amended Complaint, seeking only judicial review of his U.S. passport revocation pursuant to the APA and withdrawing all other claims for relief, including his claim pursuant to 8 U.S.C. § 1503(a). (See Am. Compl. ¶¶ 42-47). By letter motion dated May 2, 2018, plaintiff seeks an order compelling production of the administrative record or, in the alternative, a pre-motion conference to address his request to compel expedited production of the administrative record. (Pl.'s Mot. at 1). By Electronic Order dated May 2, 2018, the district court referred Mr. Saleh's administrative record request to the undersigned.

On May 5, 2018, defendants filed a response in opposition to Mr. Saleh's letter motion. (See Defs.' Resp.[10]). Mr. Saleh filed a reply on May 8, 2018. (See Pl.'s Reply[11]). On June 18, 2018, defendants filed a motion to dismiss plaintiff's Amended Complaint for lack of subject matter jurisdiction.[12] Plaintiff filed a response in opposition to defendants' motion to dismiss, and defendants filed a reply. That motion is currently pending before the district court.

---

[10] Citations to "Defs.' Resp." refer to defendants' response in opposition to Mr. Saleh's letter motion requesting an order to compel production of the administrative record or, in the alternative, a pre-motion conference for expedited production of the administrative record, filed by defendants on May 5, 2018, ECF No. 27.

[11] Citations to "Pl.'s Reply" refer to Mr. Saleh's reply in support of his letter motion requesting an order to compel production of the administrative record or, in the alternative, a pre-motion conference for expedited production of the administrative record, filed by plaintiff on May 8, 2018, ECF No. 28.

[12] Defendants suggest that the district court referred defendants' Motion to Dismiss to this Court. (See Defs.' Ltr at 1, June 18, 2018, ECF No. 42). However, the only motion referred and currently pending before this Court is Mr. Saleh's request for production of the administrative record. (See Electronic Order dated May 2, 2018).

DISCUSSION

In considering Mr. Saleh's request for production of the administrative record, the Court must first determine whether Mr. Saleh has a legal basis for bringing a claim under the APA. Whether plaintiff has a legal basis for an APA claim depends on the Department of State's rationale for revoking Mr. Saleh's passport. Mr. Saleh alleges that he is entitled to the administrative record because the Department of State violated the APA, specifically 5 U.S.C. §§ 706(1), 555(b), 702(2)(A), and 706(2)(D), in revoking his U.S. passport. (Am. Compl. ¶ 43). Defendants assert that Mr. Saleh does not have a valid claim under the APA (see Defs.' Mot. at 2-3), and therefore, Mr. Saleh "has no right to seek production of the administrative record." (Defs.' Resp. at 2).[13]

A. Review of Agency Determinations

In examining a "determination or judgment which an administrative agency is alone authorized to make," the reviewing court must judge the propriety of such action "solely by the grounds invoked by the agency." Diallo v. U.S. Dep't of Justice, Bd. of Immigration Appeals, 548 F.3d 232, 235 (2d Cir. 2008) (quoting Securities and Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947)). If the administrative agency's determination or judgment is unclear, the reviewing court "cannot be expected to chisel that which must be precise from what the agency has left vague and indecisive." Mei Fun Wong v. Holder,

---

[13] The Court has reviewed the entirety of parties' filings, including plaintiff's original Complaint, plaintiff's Amended Complaint, defendants' Motion to Dismiss, plaintiff's Response in opposition to defendants' Motion to Dismiss, and defendants' Reply in support of its Motion to Dismiss. The Court has also reviewed portions of the administrative record that defendants included as part of their pending Motion to Dismiss in order to ascertain the Department of State's rationale for revoking Mr. Saleh's passport on April 25, 2014.

633 F.3d 64, 77 (2d Cir. 2011) (quoting Securities and Exch. Comm'n v. Chenery Corp., 332 U.S. at 196-97).

B. Applicable Statutes

1. Administrative Procedure Act

Under the APA, a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review[.]" Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008) (quoting 5 U.S.C. § 702) (case citations omitted). Judicial review of agency action is limited to "final agency action for which there is no other adequate remedy in court." Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (quoting 5 U.S.C. § 704); Ali v. Tillerson, No. 16 CV 3691, 2017 WL 7048809, at *2 (E.D.N.Y. Nov. 21, 2017). While the APA itself does not confer subject matter jurisdiction for purposes of filing suit in a federal district court, 28 U.S.C. § 1331 effectively confers jurisdiction over a suit that arises under a right of action created by the APA. See Bowen v. Mass., 487 U.S. 99, 107 (1977) (stating that "it is common ground that if review is proper under the APA, the [federal] District Court ha[s] jurisdiction under 28 U.S.C. § 1331").

2. U.S. Code of Federal Regulations

Section 51.62 of Title 22 of the U.S. Code of Federal Regulations provides that the Department of State may revoke a person's passport. 22 C.F.R. § 51.62. Two bases for revoking a passport are relevant to the instant dispute. First, the Department of State may revoke a person's passport if the agency determines that "[t]he passport has been obtained illegally, fraudulently, or erroneously[.]" 22 C.F.R. § 51.62(a)(2). Second, the Department of State may revoke a person's passport if the agency concludes "that the bearer of the passport is not a U.S. national[.]" 22 C.F.R. § 51.62(b).

Whether the Department of State revokes a passport based on 22 C.F.R. § 51.62(a)(2) or 22 C.F.R. § 51.62(b) determines a passport holder's administrative remedies. See 22 C.F.R. § 51.70(a) and (b)(1) (setting forth the specific C.F.R. provisions under which a person whose passport has been denied or revoked has the right to request an administrative hearing). When the Department of State revokes a passport under 22 C.F.R. § 51.62(a)(2), based on a finding that the passport was illegally, fraudulently, or erroneously obtained, the passport holder may request an administrative hearing to review the basis for the revocation. See id. After exhausting the administrative remedies, the passport holder may seek judicial review pursuant to the APA if the Department of State revokes a passport based on 22 C.F.R. § 51.62(a)(2). See Awad v. Kerry, 257 F. Supp. 3d 1016, 1019 (N.D. Ill. 2016) (engaging in judicial review of plaintiff's claim under the APA, where the Department of State revoked plaintiff's passport after the agency determined that the passport was allegedly obtained fraudulently); Ali v. Tillerson, 2017 WL 7048809, at *3 (finding that the proper means of challenging a passport revocation based on 22 C.F.R. § 51.62(a)(2) is the APA).

By contrast, if a passport is revoked pursuant to 22 C.F.R. § 51.62(b) because the bearer is not a U.S. citizen, the passport holder is not entitled to an administrative hearing. See 22 C.F.R. § 51.70(a) and (b)(1). Compare Acosta v. U.S., No. 14 CV 0420, 2014 WL 2216105, at *4 (W.D. Wash. May 20, 2014) (finding, pursuant to C.F.R. § 51.70(a) and (b)(1), that no post-revocation administrative hearing is available where the Department of State revokes a passport for non-nationality), and Guajardo v. Kerry, No. 13 CV 0608, 2014 WL 12538142, at *3 n.1 (W.D. Tex. May 2, 2014) (noting that although a passport holder may seek a post-revocation administrative hearing in some instances, this does not apply where the Department of State revokes a passport due to non-nationality), with Ali v. Pompeo, No. 16 CV 3691, 2018 WL 2058152, at *1 (E.D.N.Y.

7

May 2, 2018) (explaining that plaintiff had received an administrative hearing when the Department of State revoked plaintiff's passport based on alleged fraud).

In circumstances where the Department of State revokes a passport pursuant to 22 C.F.R. § 51.62(b), based on a finding that a person is not a U.S. national, the APA is not a proper mechanism for seeking judicial review. Instead, the plaintiff may seek judicial review under 8 U.S.C. § 1503(a). Section 1503(a) provides, in pertinent part:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action . . . for a judgment declaring him to be a national of the United States[.]

8 U.S.C. § 1503(a). Indeed, Section 1503(a) provides an adequate remedy in court when the Department of State revokes a person's passport based on a finding of non-nationality. See Alsaidi v. U.S. Dep't of State, 292 F. Supp. 3d 320, 326 (D.D.C. 2018) (finding that 8 U.S.C. § 1503(a) provides plaintiff an adequate avenue to assert U.S. citizenship claims) (citing L. Xia v. Tillerson, 865 F.3d 643, 655 (D.C. Cir. 2017)); Xia v. Kerry, 73 F. Supp. 3d 33, 45 (D.D.C. 2014) (finding that 8 U.S.C. § 1503(a) permits a person claiming to be a national of the United States, who has been denied the rights and privileges of U.S. citizenship, to seek a "judgment declaring him to be a national of the United States") (quoting 8 U.S.C. § 1503(a)).

3. Analysis

The parties disagree as to the Department of State's basis for revoking Mr. Saleh's passport on April 25, 2014. Mr. Saleh contends that the Department of State revoked his passport pursuant to 22 C.F.R. § 51.62(a)(2). (See Pl.'s 4/23/18 Ltr[14] at 1; Am. Comp. ¶ 34; Pl.'s Mot. at 2; Pl.'s

---

[14] Citations to "Pl.'s 4/23/18 Ltr" refer to Mr. Saleh's letter to the district court on April 23, 2018, ECF No. 23.

Reply at 1; Pl.'s Resp. Mot.[15] at 7-8). In particular, Mr. Saleh highlights the fact that the Department of State cited to 22 C.F.R. §51.62(a)(2) in a notice of revocation letter dated September 27, 2017.[16] (See Pl.'s Reply at 1; Pl.'s Resp. Mot. at 7-8; Defs.' Mot., Ex. B). Accordingly, Mr. Saleh maintains that the APA is the appropriate mechanism to seek judicial review of his passport revocation. (See Pl.'s Resp. Mot. at 11).

Defendants concede that the Department of State relied on 22 C.F.R. § 51.62(a)(2) in informing Mr. Saleh about his passport revocation. (See Defs.' Mot. at 12). Defendants state: "Admittedly, here the State Department did not revoke [Mr.] Saleh's passport under 22 C.F.R. § 51.62(b), which allows for revocation based on the State Department's conclusion 'that the bearer of the passport is not a U.S. national,' but instead relied on 22 C.F.R. § 51.62(a)(2)'s allowance for revocation of passports that have 'been obtained illegally, fraudulently, *or erroneously*.'" Id. (emphasis in original). Nevertheless, defendants argue that this is a "distinction without a difference" because the Department of State revoked Mr. Saleh's passport when it discovered that the agency had erroneously designated Mr. Saleh as a U.S. national. (See id.) Thus, defendants assert that Mr. Saleh's exclusive recourse for contesting his passport revocation is 8 U.S.C. § 1503(a). (See id. at 12-15). In short, defendants ask the Court to consider the factual basis for Mr.

---

[15] Citations to "Pl.'s Resp. Mot." refer to plaintiff's Response in Opposition to Defendants' Motion to Dismiss, filed on June 18, 2018, ECF No. 38.

[16] The Department of State's letter dated September 27, 2017 can be found attached to defendants' Motion to Dismiss as Exhibit B. The letter states "that previous attempts to notify [Mr. Saleh] of this revocation action in writing may have been unsuccessful." (Defs.' Mot., Ex. B). Defendants indicate that the Department of State "unsuccessfully attempted to notify [Mr. Saleh] of the revocation using the address listed on his passport application." (Defs.' Ltr at 2, Feb 22, 2018, ECF No. 15). Defendants further suggest that providing notice to Mr. Saleh of his passport revocation became possible on September 27, 2017, only after Mr. Saleh filed the instant action. (See Defs.' Mot. at 7).

Saleh's passport revocation and not the specific regulation the Department of State cited as the basis for revocation. (See id. at 12-13).

A. Application

The Court notes that the Department of State's notice of revocation letter to Mr. Saleh does indeed cite to 22 C.F.R. § 51.62(a)(2) as the basis for revoking Mr. Saleh's passport. (Defs.' Mot., Ex. B). The letter explained the Department of State's reasoning as follows:

> A review of your application shows that your father did not have sufficient physical presence in the United States prior to your birth to transmit citizenship to you through section 301(g) of the INA. As part of a 1998 application for a Consular Report of Birth Abroad, your father submitted a sworn "Affidavit of Residence and Paternity" to the Department. This affidavit showed your father was present in the United States for only nine years prior to your birth. Because your U.S. citizen father did not satisfy the physical presence requirement, and because there is no evidence that your mother naturalized as a U.S. citizen prior to your birth, you are not qualified to claim U.S. citizenship under the provisions of the INA set forth above. As there is no evidence that you lawfully acquired U.S. citizenship, you are not entitled to a U.S. passport and the passport you received previously should not have been issued.

(Id.) The letter also advised Mr. Saleh that he had a right to a hearing under Section 51.70 through 51.74 of Title 22 of the U.S. Code of Federal Regulations, which would address the evidence the Department of State relied upon in revoking Mr. Saleh's passport. (Id.) In addition, the letter indicated that Mr. Saleh could reapply for a U.S. passport should he obtain evidence establishing his claim to U.S. citizenship. (Id.) A cable dated April 25, 2014, created by the Department of State and sent to the consular section at the U.S. embassy in Sana'a, Yemen, and the Sana'a Fraud division, also details the same content.[17] (See Defs.' Mot., Ex. D).

---

[17] The cable dated April 25, 2014 includes a header addressed from "SMART Archive" to "svcSMARTBTSPOP5" with a sub-header "Action" line that reads "(Sanaa) [sic] *IMMEDIATE*;

10

Based on the portions of the administrative record included in defendants' Motion to Dismiss, the Court finds that the Department of State's rationale for revoking Mr. Saleh's U.S. passport on April 25, 2014 is unclear. First, the Department of State's citation to 22 C.F.R. § 51.62(a)(2) is, on its face, *not* a finding of non-nationality. Furthermore, the administrative record disclosed thus far does not explain why the agency did not cite to 22 C.F.R. § 51.62(b) if indeed the "sole basis for determining that [the agency] had 'erroneously' issued the 2010 passport was its conclusion that [Mr.] Saleh and his father had never properly established that [Mr.] Saleh derived citizenship from his father." (Defs.' Mot. at 14 (emphasis in original)).

Additionally, the Department of State advised Mr. Saleh that he could request a hearing to seek administrative review of his passport revocation. (See Defs.' Mot., Ex. B). As discussed above, a hearing is not an administrative remedy available to persons whose passport the agency revokes based on a finding of non-nationality. See 22 C.F.R. § 51.70(a) and (b)(1). However, such an administrative hearing *would* be available if the Department of State revoked a person's passport pursuant to 22 C.F.R. § 51.62(a)(2) – the provision cited in the agency's notice of revocation letter to Mr. Saleh. Further support for plaintiff's interpretation of the Department of State's notice of revocation letter is the fact that the agency sent the consular cable not only to the Sana'a consulate, but also to the Sana'a Fraud consular division.

Relatedly, the administrative record in its incomplete form does not explain on what basis the Department of State issued Mr. Saleh a U.S. passport in August 2010. The Department of State appears to have denied plaintiff's application for a U.S. passport on at

---

Sanaa [sic] Fraud *IMMEDIATE*." (Defs.' Mot., Ex. D (emphasis in original)).

11

least three occasions prior to Mr. Saleh's passport revocation. Defendants assert that the Department of State initially denied Mr. Saleh's passport application because "[p]laintiff's father failed to meet the physical presence requirements for transmitting citizenship to his son" under section 301(g) of the INA. (See Defs.' 2/22/18 Ltr at 1). Defendants, however, have not definitively explained why the Department of State granted Mr. Saleh's passport application in August 2010, suggesting that one possible reason is that the Department of State "simply made a computational error when tallying the days [p]laintiff's father had been physically present in the United States[.]" (See Defs.' Mot. at 5). Moreover, defendants offer no supporting documentation to explain why the Department of State denied Mr. Saleh's passport applications in 2007 and 2009. Additional documents concerning the Department of State's decisions in 2007 and 2009 may explain why the Department of State granted plaintiff's passport application in August 2010.

Having concluded that the Department of State's rationale for revoking plaintiff's passport is ambiguous, the Court finds that it must review the entire administrative record to determine if Mr. Saleh has a potential claim for judicial review under the APA. Although defendants have produced portions of the administrative record, defendants have not furnished additional documents that may shed light on the agency's decision to cite to 22 C.F.R. § 51.62(a)(2), and not 22 C.F.R. § 51.62(b), in its notice of revocation letter to Mr. Saleh. One example cited by plaintiff is that defendants have not produced the entirety of Mr. Saleh's 2010 passport application, including supporting documentation that ultimately resulted in Mr. Saleh obtaining his U.S. passport initially. (See Pl.'s Resp. Mot. at 4-5). There may also be additional documents in the administrative record that provide a description of the agency's computations, methodology, or conclusions for issuing Mr.

12

Saleh's passport. These documents may be relevant to the Court's determination of the Department of State's basis for both granting and revoking plaintiff's passport.

Thus, the Court concludes that it must first review the entire administrative record to determine if Mr. Saleh has a potential claim under the APA before it can determine whether plaintiff is entitled to the administrative record. As the reviewing court must judge the propriety of agency action "solely by the grounds invoked by the agency," Diallo v. U.S. Dep't of Justice, Bd. of Immigration Appeals, 548 F.3d at 235, the Court must exercise caution in inferring plausible reasons for the Department of State's rationale.

Accordingly, the Court Orders defendants to produce the complete administrative record to this Court for in camera review. See Jifry v. Fed. Aviation Admin., 370 F.3d 1174, 1182 (D.C. Cir. 2004) (finding that "the court has inherent authority to review classified material ex parte, in camera as part of its judicial review function"); Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co., No. 12 CV 1641, 2015 WL 164069, at *9 (D. Conn. Jan. 13, 2015) (finding that "courts have broad discretion to order in camera review to make a threshold determination of whether a document is discoverable"). Once the Court receives the complete administrative record and evaluates the Department of State's rationale for revoking plaintiff's passport, the Court will assess whether Mr. Saleh has a potential claim under the APA, and thus, a jurisdictional basis for requesting the administrative record. The Court need not decide at this juncture whether Mr. Saleh is entitled to expedited production of the administrative record.

CONCLUSION

For the foregoing reasons, the Court orders defendants to produce the complete administrative record for in camera review by September 7, 2018.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 8, 2018

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York